IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUSTAVO AGUILAR | § | |
| | § | |
| v. | § | CASE NO. 4:16-cv-00118 |
| | § | JURY TRIAL |
| ALLIANCE RESIDENTIAL, LLC | § | |

**PLAINTIFF GUSTAVO AGUILAR'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S UNTIMELY SERVED RULE 26 EXPERT DESIGNATIONS AND REPORTS OF JASON T. ENGLISH AND SASHA IVERSEN, D.O.**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Gustavo Aguilar files this Response to Defendant Alliance Residential LLC's Motion to Strike Plaintiff's Untimely Served Rule 26 Expert Designations and Reports of Jason T. English and Sasha Iversen, D.O. (the "Motion"). Plaintiff respectfully requests that this Motion be denied. In support thereof, Plaintiff would respectfully show the Court the following:

**NATURE AND STAGE OF THE PROCEEDING**

1. This case is about a fall on October 11, 2013 in which the 61-year old Plaintiff Gustavo Aguilar suffered injuries resulting in a broken back and paraplegia. On October 4, 2016, Plaintiff suffered serious re-injury in a car accident, resulting in his hospitalization for several months. Plaintiff was discharged to his home on June 1, 2017. Plaintiff filed Rule 26 reports on December 1, 2016.

2. On April 19, 2017 and April 29, 2017, Plaintiff filed supplemental reports and disclosures. The supplemental life care plan contains revisions to Plaintiff's projected life expectancy and the removal of certain future care items. Her opinions reflect the results of Dr. Iversen's January 2017 physical examination of Plaintiff and review of medical records obtained in February of 2017. This occurred approximately five months before docket call currently

scheduled for September 29, 2017. (Dkt. "32"). It also occurred after Defendant obtained a life care plan from Dr. Susan Garrison incorporating the post-October 2016 data into her plan.

3. The central issue for the Court to rule on in this Motion is whether the supplemental disclosures and reports qualify as "supplementary." If they do, they are timely, and the Court's analysis concludes there. If the reports do not qualify as supplementary, then they are untimely, but a review of the *Campbell* factors leads the Court to the same outcome because the timing qualifies as both substantially justified and harmless.

4. Defendant has suffered no unfair surprise, harm, or prejudice, nor does Defendant's Motion identify any harm or prejudice suffered. If any prejudice has been suffered – which it has not – then, per *Campbell*, a continuance would suffice to cure it, considering the import of these experts' testimony to Plaintiff's case. Defendant, however, has already received an adequate cure *via* extensions of time to incorporate information about Plaintiff's post-October 2016 medical condition into its experts' reports, as well as an opportunity to resume Dr. Iversen's deposition after receiving her supplemental report. Plaintiff requests the Motion be denied.

## EVIDENCE[1]

**Exhibit 1**     **October 18, 2016-October 27, 2016 E-mail Series from Plaintiff's Counsel to Defendant's Counsel Regarding Extension of Expert Designation Deadlines**

**Exhibit 2**     **October 27, 2016 Executed Rule 29 Stipulation**

**Exhibit 3**     **January 20, 2017 E-mail String Regarding Defendant's Request for Additional Time to Obtain Medical Records Before Designating Experts**

**Exhibit 4**     **January 20, 2017 E-mail String Regarding Scheduling of Expert Depositions and Defendant's Request for Additional Time to Obtain Medical Records**

---

[1] Plaintiff incorporates by reference and cites to the expert reports and Rule 26 disclosures on file with the Court by docket entry, paragraph, and page number.

| | |
|---|---|
| **Exhibit 5** | February 10, 2017 E-mail Granting Additional Extension to Defendant to Incorporate Newly Discovered Medical Records into Expert Report |
| **Exhibit 6** | Notice of Deposition of Sasha Iversen, D.O. for June 21, 2017 |
| **Exhibit 7** | Declaration of Kiernan McAlpine |
| **Exhibit 8** | April 4, 2017 Deposition of Sasha Iversen, D.O. |
| **Exhibit 9** | February 3, 2017 Deposition of Jason English |
| **Exhibit 10** | Affidavit of Sasha Iversen, D.O. |

## ISSUES TO BE RULED UPON AND LEGAL STANDARDS

5. The issues for the Court to rule upon are as follows:

   a. Did the April 19, 2017 disclosures and report from Dr. Sasha Iversen contain newly disclosed opinions that were based on information that was <u>not</u> available to the Plaintiff as of December 1, 2016?

   b. When compared to Mr. English's report dated December 1, 2016, did the April 29, 2017 disclosures or report contain any new information apart from information given during his deposition?

   c. Were the April 19, 2017 and April 29, 2017 reports disclosed before the time the Plaintiff's Rule 26(a)(3) pretrial disclosures came due?

   d. If the reports are untimely, do the circumstances merit the relief sought by Defendant according to the *Campbell* factors?

6. Rule 26(e) not only permits, but requires supplementation of previous disclosures regarding expert testimony if a party learns that such disclosures are incorrect or incomplete.

7. Rule 26(e)(2) makes clear that "[f]or an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the

report and to information giving during the expert's deposition." FED. R. CIV. P. 26(e)(2). Rule 26(e)(2) further provides that "any additions or changes to [the information included in the report and to information given during the expert's deposition] must be disclosed <u>by the time the party's pretrial disclosures under Rule 26(a)(3) are due</u>." *Id.*

8. Where the Court does not provide deadlines for supplemental reports or pretrial disclosures, Rule 26(a)(3) provides that pretrial disclosures are due at least 30 days before trial. FED. R. CIV. P. 26(a)(3).

9. A district court has broad discretion to expand, modify, and interpret its own filing deadlines. Rule 6(b), Fed. R. Civ. P.; *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995). District courts enjoy "wide latitude" in pre-trial matters and "must be allowed to act with '<u>*intelligent flexibility*</u>' in this area." *Campbell v. Keystone Aerial Surveys, Inc.,* 138 F.3d 996, 1000 (5th Cir.1998) (citing *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971)) (emphasis added).

10. Where the Court determines that a party failed to disclose information as required by Federal Rule of Civil Procedure 26(a), then "the party is not allowed to use that information . . . to supply evidence on a motion . . . or at trial, <u>unless the failure was substantially justified or is harmless</u>." *Id.* (citing Rule 37(c)(1), FED. R. CIV. P.) (emphasis added).

11. The *Campbell* factors provide that Courts ruling on motions to strike testimony by late-designated experts take into consideration four different factors: "(1) the importance of the witness's testimony; (2) the prejudice to the opposing party if the witness is allowed to testify; (3) the possibility that a continuance would cure potential prejudice; and (4) the explanation given for the failure to identify the witness." *Campbell*, 138 F.3d at *id.* (citing *Bradley v. United States,* 866 F.2d 120, 124 (5th Cir.1989)).

## PROCEDURAL BACKGROUND

12. On April 15, 2016, the Court entered a Scheduling Order that required the Plaintiff to designate experts by October 1, 2016. (Dkt. "10"). This Order provided until November 1, 2016 for the Defendant to designate experts.

13. By agreement of the parties, both parties' expert designation deadlines were extended to November 1, 2016, and December 1, 2016, respectively.

14. On October 4, 2016, Mr. Aguilar suffered serious injuries in a collision. On October 18, 2017, Plaintiff's counsel conferred with counsel for Defendant by phone to discuss a bilateral extension. For a time, Defendant did not respond.

15. On October 27, 2016, Plaintiff's counsel sent Defendant a second e-mail re-stating the need for an additional extension under the circumstances. **Ex. 1.**

16. Subsequently, the parties agreed to extend Plaintiff's deadline to designate expert witnesses to December 1, 2016, and Defendant's deadline to January 6, 2017. **Ex. 2.** Unfortunately, Plaintiff's life care planner's physical examination scheduled for November 16, 2016 was impossible due to Plaintiff's physical rehabilitation program. **Ex. 10 at ¶¶5-8.**

17. On December 1, 2016, Plaintiff filed his Rule 26 Designation of Expert Witnesses. This filing included the reports of Dr. Sasha Iversen, Mr. William Davenport, and Mr. Jason English. (Dkt. "22"). Dr. Iversen relied upon the medical records available from his fall in October 2013. (Dkt. "22-2" at pp. 5-24).

18. Once Mr. Aguilar was settled in TIRR and his physical therapy regimen became less demanding, on January 26, 2017, Dr. Iversen conducted an examination of Mr. Aguilar at an inpatient nursing home in Pasadena, Texas. **Ex. 8, p. 21:25, 22:1-14; Ex. 10 at ¶8.**

19. Subsequent to Plaintiff's December 1, 2016 filings, Defendant's Rule 26 disclosures pertaining to experts came due on January 6, 2017. **Ex. 2.** Defendant, however, obtained another extension until January 27, 2017 to designate expert witnesses. **Ex. 3.** On January 27, 2017, Defendant disclosed Tony DiNicola, an architect, as its liability expert, and included in Mr. DiNicola's expert report several commentaries on the Plaintiff's December 1, 2016 expert report of Jason English. (Dkt. "23" at pp. 18-20).

20. On January 20, 2017, Defendant requested an additional extension until February 10, 2017 for its "damages experts," to collect medical records pertaining to the October 4, 2016 incident. **Ex. 4 at pp. 3-4.** In this e-mail string, Plaintiff's counsel stated that Dr. Iversen required all of the medical records post-October 2016 relied upon by Defendant's experts so that she could review them prior to presenting for deposition. *Id.* at p. 1.

21. On February 10, 2017, Defendant requested yet another extension to file its "damages experts" reports, to allow for a delay in receiving documents pertaining to the October 2016 collision. **Ex. 5.** Plaintiff did not oppose this additional extension since the request was "premised upon a delay in receipt of documents from institutional medical providers." *Id.*

22. By agreeing to extensions until January 27, 2017, February 10, 2017, and February 17, 2017, Plaintiff afforded Defendant adequate time to collect documentation pertaining to his current physical condition and incorporate this into Defendant's reports.

23. On February 14, 2017, Plaintiff filed a supplemental Rule 26 disclosure to include certain opinions expressed by Mr. English regarding Tony DiNicola's expert report, and other opinions stated in Mr. English's deposition. (Dkt. "28"). It also includes an updated list of documents reviewed in anticipation of giving testimony. *Id.*

24. On February 17, 2017, Defendant filed expert reports by Dr. Susan Garrison, a life care planner, and Dr. Stuart Weil, a neurosurgeon. Among the documents reviewed by Dr. Susan Garrison are Life Flight records from October 4, 2016. (Dkt. "30-4" at p. 14). Furthermore, Dr. Weil reviewed MRI studies of Aguilar's cervical and thoracic spine taken subsequent to the injury of October 4, 2016 and wrote about these in his report. (Dkt. "30-2" at p. 5, ¶3).

25. Sasha Iversen underwent deposition on April 4, 2017. The parties have agreed to resume her deposition on June 21, 2017. **Ex. 6.**

26. On April 19, 2017, Plaintiff filed a supplemental Rule 26 disclosure regarding experts along with Dr. Iversen's Supplemental Expert Report. This Supplemental Expert Report reflects the adjustments made in Dr. Iversen's life care plan following her independent medical examination. Defendant will have an additional opportunity to depose her about her opinions on June 6, 2017. **Ex. 6.**

27. On April 30, 2017, Plaintiff filed a supplemental Rule 26 disclosure regarding experts along with Mr. English's Supplemental Expert Report.

28. All supplementation at issue occurred before the agreed May 1, 2017 discovery deadline. (Dkt. "31"). This occurred several months in advance of the September 29, 2017 docket call, and therefore well before Rule 26(a)(3) pretrial disclosures came due.

## ARGUMENTS AND AUTHORITIES

**A. Dr. Iversen's April 19, 2017 Report Supplements Partially Incomplete and Incorrect Opinions Due to the Discovery of Previously Unavailable Information**

29. The Motion must be considered in tandem with an as-yet unfiled *Daubert* motion seeking to exclude and/or limit Dr. Iversen's testimony. The parties reached an agreement not to file motions objecting to damages expert witnesses until after the Plaintiff has an opportunity to depose Dr. Weil and Dr. Garrison. The Motion notes the relief sought would leave unaffected the

original designation and report of Iversen dated December 1, 2016. This presents a "Catch 22" situation: If the Court grants Defendant's requested relief and strikes Dr. Iversen's supplemental report as untimely, her opinions will be limited to those disclosed on December 1, 2016. Defendant will then move to exclude her testimony for not taking the facts of his current medical condition into account. To prevent this type of situation and allow trial on the merits, Rule 26(e)(2) provides experts an opportunity to supplement their opinions reasonably in advance of trial.

30. Prior to serving the December 1, 2016 expert report of Dr. Iversen, Plaintiff did not request another extension or seek relief from the Court at that time for several reasons. First, it was unclear if Mr. Aguilar's prognosis would change. Second, even if Mr. Aguilar's prognosis did change, it was not clear that the contents of the life care plan would require revision. Dr. Iversen concluded that revisions would be necessary as a result of her January 26, 2017 examination and receipt of his medical records in February of 2017. **Ex. 10.** This subsequently-acquired information led her to conclude that her previous report contained some incorrect and incomplete information, necessitating her April 19, 2017 supplemental report.

      **i. Dr. Iversen's Supplemental Report Contains a Downward Life Expectancy Adjustment**

31. Dr. Iversen's December 1, 2016 report provides a life expectancy of nineteen years to Mr. Aguilar. (Dkt. "22-2" at p. 46). In her April 19, 2017 report, she provides a life expectancy of thirteen years. (Dkt. "34-1" at p. 22). As a result of her examination of Mr. Aguilar on January 26, 2017, she appreciated a need to make a life expectancy adjustment due to his current physical condition. **Ex. 8, p. 23:8-25.**

32. Due to Mr. Aguilar's hospitalization on October 4, 2016 in the intensive care unit at Memorial Hermann for over a month and TIRR for intensive rehabilitation, Mr. Aguilar could not undergo his initially scheduled November 16, 2016 independent medical examination ("IME")

with Dr. Iversen. **Ex. 8, p. 15:20-25, 16:1-8; Ex. 10 at ¶¶5-9.** Please note that it was later learned that this accident made Mr. Aguilar go from being paraplegic to quadriplegic. *Id.* In the month of November 2016, Mr. Aguilar's unavailability meant that Dr. Iversen could not examine him until January 26, 2017. **Ex. 8, pp. 15:7-25; 16:1-8; 19:24-25; 20:1-16; 21:25; 22:1-14; Ex. 10 at ¶¶5-9.** This was the result of medical necessity and not, as Defendant suggests, due to "counsel's lack of diligence."

33. Once Dr. Iversen examined Plaintiff and realized her previous opinions were partially incomplete due to this newly discovered and previously unavailable information, Dr. Iversen supplemented her report with a lowered life expectancy and lower projected future medical costs. This complies with the letter and spirit of Rule 26.

### ii. Dr. Iversen's April 19, 2017 Supplemental Report Removed Certain Future Care Items in Accordance with Mr. Aguilar's Present Physical Condition

34. Dr. Iversen testified that certain items included in the December 1, 2016 report would not be included in the supplemental report because, based on Mr. Aguilar's current physical condition, he will not need those items. **Ex. 8, pp. 249:11-25; 250:1-8; 251:24-25; 252:1-17.** Several examples discussed included a transfer board and reacher. *Id.* Additionally, he will no longer need a shower chair or shower wheelchair, because he is no longer able to use one due to his quadriplegia. *Id.* He also cannot self-catheterize anymore, eliminating the need for the recommended suprapubic catheter. **Ex. 8, pp. 243:3-7, 20-25; 244:1-12.**

35. This change in opinion arises due to certain comorbidities that Mr. Aguilar presently has that came from the October 4, 2016 car accident. **Ex. 8, pp. 252:19-25; 253:1-11.** Dr. Iversen's December 1, 2016 report recommended a suprapubic catheter but her April 19, 2017 supplemental report removes this item. These examples illustrate the changes to the items included in the life care plan to conform to Plaintiff's current physical condition.

### iii. Changes in Dr. Iversen's Opinions About Mr. Aguilar's Life Expectancy and Required Future Care Flow from Facts and Data that were Previously Unavailable

36. Dr. Iversen's opinions as reflected in her April 19, 2017 report changed as a result of her January 26, 2017 physical examintion and subsequently acquired medical records from post-October 2016. For this reason, the supplemental disclosures and report of Dr. Iversen were timely, permissible, and required. FED. R. CIV. P. 26(e).

37. The circumstances of Mr. Aguilar's hospitalization and his subsequent rehabilitation provides "substantial justification" why she did not perform her physical examination as of December 1, 2016. Defendant obtained three extensions to collect the medical records that Dr. Iversen ultimately incorporated into her report. **Exs. 2, 3, 4 & 5.** (Dkt. "34-1" at p. 5).

38. Defendant's Motion claims that "Dr. Iversen could have and should have known about this information prior to her December 1, 2016 report as it was information that was in the Plaintiff's possession and control." This argument evidences Defendant's belief that during the months of October and November 2016, the Plaintiff, while he was in ICU fighting for his life and undergoing intensive daily rehabilitation at TIRR with an unknown prognosis, should have instead been collecting medical records *from the very treatment he was undergoing at the time* to provide to his expert. This unfairly ignores the Plaintiff's physical limitations and extreme hardships.

39. Defendant's argument that "the fact that the Plaintiff was injured in a motor vehicle accident on October 2016 is not 'new information'" is disingenuous. Defendant obtained not one but three additional extensions to collect documents from third parties such as Memorial Hermann and TIRR to develop a fuller picture of the Plaintiff's current physical condition, and then provide such documents to its experts.

### iv. Dr. Iversen's Report Qualifies as Supplementary and is Therefore Timely

40. Plaintiff was not only permitted to provide Dr. Iversen's supplemental report and the supplemental Rule 26 disclosures accompanying same, he was *required* to do so under FED. R. CIV. P. 26(e)(2).

41. The information gleaned through review of post-October 2016 records and through Dr. Iversen's examination qualifies as "unavailable" at the time of Plaintiff's December 1, 2016 report and Plaintiff timely supplemented a report and disclosure reflecting Dr. Iversen's opinions. Allowing Plaintiff to do so is necessary to place Plaintiff on the same footing as Defendant's expert, who relied on post-October 2016 medical records to form her opinions and obtained several extensions from Plaintiff to do so. The Motion should be denied.

**B. Jason English's April 30, 2017 Supplementation Includes Opinions Stated in His February 3, 2017 Deposition and No Other New Opinions**

42. Plaintiff served his supplemental disclosures and Mr. English's supplemental report in the spirit of full disclosure and total compliance with Rule 26(e)(2) which requires disclosure of information obtained through deposition.

   **i. Mr. English's April 29, 2017 Supplementation Contains an Updated List of Reviewed Documents**

43. Mr. English's April 29, 2016 Supplemental Report lists documents that were not available prior to December 1, 2016. (Dkt. "39-1" at p. 9). Among these documents are the deposition of Melissa Herrera, taken February 24, 2017, the deposition of Ingrid Shultz taken on March 23, 2017, the deposition of Tony DiNicola, taken on March 14, 2017, and the report of Tony DiNicola issued on January 27, 2017. Mr. English's own deposition occurred on February 3, 2017. *Id.* Mr. English's supplemental report lists these additional reviewed documents for purposes of identifying documents he relied on in forming his opinions as well as identifying documents he may testify about at trial.

      **ii. Mr. English's Supplemental Report Includes Exposition of Certain Statements from the December 1, 2016 Report Addressed in Greater Detail in His Deposition**

44.    Certain statements in Mr. English's December 1, 2016 report were developed in greater detail during his deposition testimony.

45.    Regarding the measurements of the space which Mr. Aguilar parked in on the date of the incident, Mr. English testified to this in detail in his deposition, and contests the measurements provided by Mr. DiNicola in his "special note" on page five of his supplemental report. **Ex. 9, p. 48:2-25; 49:1-17.** Mr. English further testified in detail about the dangerousness of the curb and the constrained space in his deposition. **Ex. 9, p. 126:5-25; 127:1-25; 128:1-19.**

46.    Mr. English's December 1, 2016 report is not a "preliminary report." It is substantially complete. The April 29, 2017 report merely complies with Rule 26(e). It does not offer any previously-undisclosed opinions and does not amount to an "extension of the deadline by which the Plaintiff was required to deliver the lion's share of his expert information." *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996). Also, the discussion of economic burden reflects a change in the law that occurred post-December 1, 2016. *See UDR Texas Properties, L.P. v. Petrie*, No. 15-0197, 2017 WL 38246, **3-4 (Tex. Sup. Ct. January 27, 2017).

      **iii. English's Supplemental Report and Disclosures Comply with Rule 26**

47.    The depositions post-December 1, 2016 as well as DiNicola's report provided substantial new information not previously available to the parties. Plaintiff therefore timely supplemented Mr. English's report and his Rule 26 disclosures.

**C.  The Supplemental Reports are Timely Under Rule 26**

48.    Please note at the outset that Plaintiff filed the April 19, 2017 Supplemental Expert Report of Dr. Sasha Iversen and the April 29, 2017 Supplemental Expert Report of Jason English prior to the Court's May 1, 2017 agreed discovery deadline. (Dkt. "31"). Furthermore, Plaintiff

served these expert reports well in advance of the deadline for any Rule 26(a)(3) pre-trial witness and exhibit lists, the final deadline for supplementing expert reports.

49. As supplemental reports, these reports qualify as timely under the Rules. *See Walker v. George Koch Sons, Inc.*, No. 2:07cv274 KS-MTP, 2008 WL 4371372, *8 (S.D. Miss. September 18, 2008) (finding supplemental reports timely as submitted prior to the discovery cutoff established by the court's scheduling order and more than thirty days prior to trial).

### D. Plaintiff Meets All Four *Campbell* Factors Showing No Good Cause Exists to Strike the Supplemental Expert Reports and Disclosures, Even if They Were Untimely

50. Even if the Court reaches the conclusion that Plaintiff's supplemental reports are not, in fact, supplemental, and finds them untimely, the relief Defendant requests is inappropriate per *Campbell*, because 1) the Court would strike the Plaintiff's case-in-chief liability expert and Plaintiff's case-in-chief expert on future medical costs necessitated by Plaintiff's paraplegia; 2) Defendant will not reasonably suffer any harmful prejudice because it has already retained counter-experts to address all of the content at issue in Plaintiff's supplemental reports; 3) a continuance would cure any conceivable prejudice; and 4) discovery of previously unavailable information necessitated the supplemental reports, which substantially justifies and excuses Plaintiff's alleged untimely filings. *Campbell,* 138 F.3d at *id.*

#### i. Plaintiff's Retained Experts Represent His Principal Witnesses on Future Medical Costs, Breach of Duty of Care, and Causation – Striking Their Supplemental Disclosures Would Harm Plaintiff's Ability to Try This Case on the Merits

51. Plaintiff became paraplegic as a result of the October 2013 fall and he requires significant future care as a result. It is essential that the jury not hear an artificially slanted presentation from the Plaintiff's and the Defendant's respective experts simply because Plaintiff's expert was not afforded time to incorporate new information developing at the very time Plaintiff's initial report came due. With respect to Mr. English's testimony, since Defendant has designated

an expert to counter Plaintiff's expert's opinions, it is necessary that Plaintiff's expert be allowed to offer opinions to rebut Defendant's expert.

52. The fact that the parties worked closely on agreed dates for expert discovery throughout the discovery period suggests that the parties considered these disclosures important, a fact which weighs against striking the supplemental reports. *Metaswitch Networks Ltd. v. Genband US LLC*, No. 14-cv-744-JRG-RSP, 2016 WL 943948, *2 (E.D. Texas March 11, 2016).

### ii. Defendant Fails to Identify How or Why It Will Suffer Prejudice or Harm

53. Defendant advances the circular argument that since the supplementation came after December 1, 2016, it is late, and Defendant has therefore suffered prejudice because it is late, but Defendant has not explained why this results in prejudice or harm in this case. The Fifth (5th) Circuit has held that "**mere delay does not alone constitute prejudice**." *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (emphasis added).

### iii. Defendant Will Not Suffer Prejudice or Harm

54. Defendant designated its own liability expert and its own life care planner. Fears of a "trial by ambush" appear unwarranted where Plaintiff allowed Defendant additional time to obtain newly discovered data and incorporate same into its initial reports.

55. In the case of Dr. Iversen, Defendant has already retained its own life care planner who reviewed records documenting his treatment to date. Defendant has already prepared to rebut these opinions by taking Mr. Aguilar's present condition into account.

56. With respect to Mr. English, Defendant has discovered his opinions since no later than February 3, 2017 and furnished same to its expert, Mr. DiNicola, prior to presenting him for deposition on March 14, 2017. Defendant has more than adequate opportunity to prepare for trial.

### iv. A Continuance Would Cure Any Conceivable Prejudice, Although the Multiple Extensions Previously Obtained by Defendant Accomplish the Same Goal

57. A continuance would cure any alleged surprise or prejudice that Defendant claims to suffer. However, under the circumstances, it is apparent that Defendant has obtained enough of a "continuance" *via* extensions to file reports that no further continuance is necessary.

### v. The Circumstances Do Not Merit Exclusion

58. Plaintiff's explanation for failing to disclose the opinions contained in the supplemental reports provide substantial justification. Since Rule 26(e) affirmatively requires supplemental disclosure of these opinions, Plaintiff did not request leave of Court but would respectfully request same should the Court deem it necessary.

### CONCLUSION AND PRAYER

Plaintiff Gustavo Aguilar respectfully requests that this Motion be denied and for such further and other relief to which he may be entitled at law or in equity.

Dated: June 19, 2017

Respectfully submitted,

**DASPIT LAW FIRM**

*/s/ Kiernan McAlpine*
Kiernan McAlpine
ATTORNEY-IN-CHARGE
State Bar Number: 24058519
Fed. Bar Number: 1132611
DASPIT LAW FIRM, PLLC
440 Louisiana Street, Suite 1400
Houston, Texas 77002
Phone: (713) 322-4878
Fax No.: (713) 587-9086

**ATTORNEYS FOR THE PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2017, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, and that this instrument is therefore available for viewing and downloading from the Court's ECF system. I also served a copy on all counsel of record in accordance with FED. R. CIV. P. 5b.

*/s/ Kiernan McAlpine*
Kiernan McAlpine